Argued October 2, affirmed November 21, 1962

# UNION PACIFIC RAILROAD COMPANY *v.*
# STATE TAX COMMISSION
### 376 P. 2d 80

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General and Carlisle B. Roberts, Assistant Attorney General, Salem.

*Randall B. Kester,* Portland, argued the cause for respondent. With him on the brief were Maguire, Shields, Morrison, Bailey & Kester, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Lusk, Justices.

SLOAN, J.

In the tax year 1958 defendant State Tax Commission assessed and equalized plaintiff's taxable property situate in Multnomah county at 117 percent of true cash value. The commission assigned a similar ratio to all property assessed by the commission within that county. The ratio of all locally assessed property was 100 percent. Plaintiff appealed this determination of the commission to the circuit court. The court set aside the commission's order. The commission appeals.

The most difficult question in the case is the mode of review chosen by plaintiff to bring the case before

the circuit court, and ultimately here, for review. To present the questions we are called upon to decide, it is necessary to describe the statutory schemes of review which have created the basis for contention in this case. The references to ORS will be as the sections were designated in 1958.

Chapter 308 ORS authorized and directed the defendant commission to perform certain functions in respect to the taxation of the property of public utilities within this state. Basically, it has been and is the duty of the commission to determine the assessed valuation of the utility property, to apportion that assessment to the counties in which the property is situate and to equalize with reference to other property within a county the ratio of assessed value to true cash value. In summary, the statutory process by which this function was accomplished first required a utility, including plaintiff, to file with the commission a statement of its taxable property situate within the state on a given date. The commission was authorized to use this and a wide range of other information to arrive at a tentative assessment for the tax year, in this case the year 1958. The statute then required the commission to meet as a board of review beginning on June 9 of that year. Twenty days prior to that date it was required to give to the utility notice of "* * * the amount it has placed or intends to place on the roll as the assessment of the company's property." ORS 308.595 (2). The notice served upon plaintiff in this case notified plaintiff of "a tentative 1958 true cash value" of all of its Oregon property. It also stated that: "This amount will be reduced to the assessed value by application of the county ratio or ratios when said ratios are determined by the Commission in July, 1958." And the notice further re-

minded plaintiff in these words of the statutory right of review: "Oregon law requires that a petition *for reduction or change of an assessment* to be valid must actually be received by the Commission on or before the first day (June 9, 1958) the Commission meets as a board of review." (Emphasis supplied for later mention.)

The utility was thus afforded an opportunity to petition the commission, acting as a board of review, "for reduction or change of apportionment or for the correction of a particular assessment * * *." ORS 308.595 (2). The statute, as stated in the quote from the commission's notice, required that the petition must have been filed before June 9, 1958. The grounds just stated were the only complaints that could be made by such a petition. Thereafter, if the commission refused, in whole or in part, to grant the relief prayed for in the petition, ORS 308.620 (1) permitted appeal to the circuit court. The section just cited was the one which provides the basis for the commission's contention that it was the only means of review available to plaintiff in this case. The statute read:

"Any person or company assessed under ORS 308.515 who has petitioned the commission pursuant to ORS 308.595, or whose assessment has been increased by the commission, sitting for the purpose of review, and who is aggrieved by the action of the commission, may appeal therefrom to the circuit court."

Plaintiff counters by claiming that this section is limited to appeals challenging the amount of assessment and the apportionment thereof among the counties involved. That ORS 308.595 did not provide appeal from the equalization function also performed by the commission. Plaintiff relied on ORS 306.510 (1) as

providing the proper means of appeal in this case. That section provided:

> "Any taxpayer whose property is affected by an order or direction of the State Tax Commission made to a county assessor or county board of equalization under the authority contained in ORS 306.090 or 306.130, may, within six months after the order or direction has become actually known to the taxpayer, but in any event not more than two years after the order or direction becomes a matter of public record, appeal directly to the circuit court of the county in which the property affected is located. The appeal shall be perfected in the following manner only: * * *"

It should again be noted that within the time which the taxpayer was obliged to file a petition for review with the board of review, that is the 20 days immediately prior to June 9, 1958, the function of the commission by which it "reduced" the true cash value to assessed value was not and could not have been accomplished. Therefore, such a petition, as before stated, could only have challenged the amount of the assessment and the apportionment thereof amongst the counties. We previously emphasized in the quotation from the notice given plaintiff by the commission that at that time the commission apparently also recognized the same limitation of claims that could be asserted in a petition for review. So far as this record reveals, plaintiff had had no protest as to the tentative determination of true cash value made by the commission and contained in the mentioned notice. It was only when the commission subsequently, and acting as the commission not as a board of review, fixed the equalization ratio of assessed value at 117 percent of true cash value and directed the Multnomah County Assessor to levy accordingly that plaintiff was aggrieved. That grievance

could not have been challenged by a petition for review under ORS 308. The grievance could not, at that time, have existed.

■ Consequently, for the reasons stated and by reason of the legislative history of these statutes, which we have not discussed, we agree with plaintiff's contention that ORS 308.620 was limited to review of the assessment and apportionment function only and that ORS 306.510 granted plaintiff a right of review for the subsequent determination of the equalization ratio.

■ But, the commission contends, the directive of the commission to the county assessor which tells the latter what ratio to use is not an "order" in the sense that the word order is used in ORS 306.510. Various arguments are made to support the commission's contentions in this regard. We find them to be without merit.

We turn now to the merits of the commission's assignment of a ratio of 117 percent in respect to plaintiff's property in comparison with a 100 percent ratio of other non-commission assessed taxable property within Multnomah county. We look first to the basic concepts by which taxes may be imposed in this state:

"* * * all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." Oregon Const. Art. I, § 32.

"The legislative assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State." Oregon Const. Art. IX, § 1.

"All property, whether real or personal shall

be assessed at its true cash value, or a percentage thereof, applied uniformly to all classes of property within each county." ORS 308.232.

■ We are not required to decide if the limitations of the Oregon Constitution, above set forth, would have permitted the legislature itself to have made the classification attempted by the commission in this case. The legislature had not done so. The commission makes no claim to any such specific legislative classification. Nor can it be successfully contended that the State Tax Commission, by its general grants of power, had the legislative authority to make such a classification. We, of course, do not decide if the legislature could have delegated such a task. It appears clear that the commission had violated the quoted constitutional and statutory restrictions requiring uniformity and the order of the commission must fail.

■ The commission points to several years of claimed obeisance by this, and similar taxpayers, as creating something in the nature of an estoppel preventing the taxpayer from making a later challenge. We do not think such a rule should prevail. Whatever may have been the cause of prior alleged acquiescence it should not preclude a taxpayer from challenging an unlawful levy. See *Bowers v. New York Trust Co.,* 2nd Cir 1925, 9 F2d 548, 551. But if a long period of consent could weld itself into the tax law of this state and make that lawful which otherwise would be unlawful we do not find that the record before us supports the commission's claim of that kind of acquiescence.

*Nashville, C. & St. L. Ry. v. Browning,* 1940, 310 US 362, 60 S Ct 968, 84 L Ed 1254, does not carry the persuasion claimed for that case by the commission.

In *Nashville,* the Supreme Court held that: "Since, so far as the Federal Constitution is concerned, a state (Tennessee) can put railroad property into one pigeon-hole and other property into another, the only question relevant for us is whether the state has done so." 310 US 369. The court held that the law of Tennessee had provided different classifications. And in part of the opinion unnecessary to decision, the Court said that a long, unbroken practice extending over a period of more than forty years and acquiesed in by "all of the organs of the state" could form a part of the law of the state.

The facts in respect to an alleged long practice and consent in the case before us are materially different than those considered by the Court in *Nashville.* And, as said before, we do not now need to decide if the legislature of this state could have constitutionally placed plaintiff and similar taxpayers, into the "pigeonhole" attempted in the case now in review. What the *Nashville* case held was that a state can create a reasonable classification of property for tax purposes without doing violence to the Fourteenth Amendment. That determination has no significance in this case.

We think the trial court correctly decided this case. The decree appealed from is affirmed.